IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **WEB ANALYTICS DEMYSTIFIED, INC.**, | Case No. 3:13-cv-1304-HU |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KEYSTONE SOLUTIONS, LLC**, | |
| Defendant. | |

Katherine R. Heekin and Diana Fedoroff, THE HEEKIN LAW FIRM, 808 SW Third Avenue, Suite 540, Portland, OR 97204. Of Attorneys for Plaintiff.

Jonathan M. Radmacher, McEWEN GISVOLD LLP, 1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Web Analytics Demystified, Inc. ("Demystified") brings a claim for breach of contract and, in the alternative, a claim for *quantum meruit* against Defendant Keystone Solutions, LLC ("Keystone"). Keystone brings two counterclaims for breach of contract and breach of the implied duty of good faith and fair dealing. Demystified seeks summary judgment in its favor on both of its claims and against Keystone on both of Keystone's counterclaims. For the reasons below, Demystified's motion is granted in part and denied in part.

PAGE 1 – OPINION AND ORDER

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," the "mere existence of a scintilla of evidence in support of the [non-movant's] position [is] insufficient" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

Demystified and Keystone are both web consulting firms. Matthew Gellis is the manager and sole member of Keystone; Eric Peterson is the founder and senior partner of Demystified. The two firms specialize in different aspects of website analysis, but with some overlap. In January 2010, the two firms entered into the first of two agreements to refer clients to one another in return for a commission. The 2010 agreement was symmetric: both parties could make compensable referrals and both parties would be compensated on equal terms. It was also non-exclusive: both parties were permitted to refer clients to third parties. Further, neither party was obligated to make referrals at all.

By November 2010, the possibility of a merger was on the horizon, and Peterson and Gellis began negotiating a new agreement that would more tightly couple the two firms. This agreement was signed in January 2011 and is the contract at issue in this case. Dkt. 41-1 (hereinafter the "Contract").

The Contract differed from the 2010 agreement in two key regards. First, it provided for exclusivity: within each other's respective areas of expertise, the parties agreed to refer clients only to each other and not to any third parties. It expressly continued, however, to provide that neither party was obligated to make referrals. Second, the Contract introduced an asymmetry: it provided that Keystone would pay Demystified a percentage of its yearly revenue in exchange for "marketing support" from Demystified. The parties called this the "brand payment."

What constituted "marketing support" was not defined in the Contract. In 2011, however, Demystified wrote six blog posts promoting Keystone and invited Keystone representatives to a conference Demystified hosted in San Francisco. In early 2012, Keystone paid Demystified $78,922 as a brand payment for marketing support in 2011. In 2012, Demystified invited Keystone representatives to two more conferences as well as six social-networking events.

According to its terms, the Contract expired on July 11, 2012—but several provisions, including the payment obligation, survived. The parties discussed continuing to operate under all of the terms of the Contract while they negotiated its formal renewal, but whether such an agreement was reached is disputed. In any case, by the end of 2012, it became clear that the parties could not reach a new agreement. On December 10, 2012, Demystified notified Keystone that it was terminating the Contract.

At some point in 2012, both Keystone and Demystified stopped paying commissions on referrals, but the record is devoid of evidence as to when that occurred. It is undisputed,

however, that the brand payment for 2012 was due on January 31, 2013, and that Keystone did not pay it.

## DISCUSSION

Demystified seeks summary judgment on its claim for breach of contract on two grounds: first, that Keystone failed to pay referral commissions, and second, that Keystone failed to pay the 2012 brand payment. In the alternative, Demystified seeks summary judgment on its *quantum meruit* claim for services rendered. Demystified also seeks summary judgment against Keystone's counterclaims.

### A. Breach of Contract

For a contract to be breached, there must first exist a valid contract. It is undisputed that the Contract existed, was valid, and was in effect until at least July 11, 2012. Viewing the evidence in the light most favorable to Keystone, there was no agreement to continue operating under the terms of the Contract beyond that point. Thus, for purposes of summary judgment, the Contract terminated on July 11, 2012. Section 10(b) of the Contract, however, expressly provides that section 3, the payment obligation, survives termination of the Contract. Section 3 provides for two types of payments: commissions on referrals and the brand payment.

#### 1. Commissions on Referrals

The Contract structures commissions as a percentage of the client relationship: for each successful referral, the referring party is owed 20 percent of the revenues from that client for the first two years of the relationship and 10 percent of the revenues from that client for the next two years. That a commission so structured would survive the termination of the Contract makes economic sense: a referral is a discrete event, but it triggers an obligation to pay that takes place in installments. The parties expected that a decision no longer to refer clients to one another

PAGE 4 – OPINION AND ORDER

would not affect their compensation for referrals made while the agreement was in effect, and that understanding is expressed in section 10.

The commission payments were due on a monthly basis. Keystone and Demystified agree that both parties stopped paying commissions in 2012, and Keystone conceded at oral argument that it stopped first. That is a material breach of sections 3(b) and 10(b) of the Contract, and Demystified is therefore entitled to partial summary judgment on the element of breach. Demystified is not, however, entitled to summary judgment on damages for that breach, because Demystified has supplied no evidence regarding when Keystone stopped paying commissions or how much of the commission payments Keystone withheld.[1]

**2. Brand Payment**

The brand-payment term of the Contract is found in section 3(c). Under that term, Keystone was obliged to pay Demystified a percentage of Keystone's yearly revenues in exchange for "marketing support" from Demystified. Keystone does not dispute that it failed to pay any brand payment for 2012, but argues that the brand-payment term did not survive termination of the Contract.

A term in a contract is unambiguous when it is susceptible to only one "reasonable and sensible construction." *Or. Trail Elec. Consumers Co-op, Inc. v. Co-Gen Co.*, 168 Or. App. 466, 474 (2000). When the relevant terms of a contract are unambiguous, the court may grant summary judgment. *Milne v. Milne Const. Co.*, 207 Or. App. 382, 388 (2006).

Here, section 10(b) is unambiguous: "Notwithstanding any termination of this Agreement, the Parties' obligations contained in Section[] 3 . . . will survive and be enforceable

---

[1] In its briefing, Demystified argued, based on a spreadsheet printout in Dkt. 42-12, that Keystone "owed" Demystified $340,002.78 in commissions for the last six months of 2012. At oral argument, however, Demystified agreed that there was no evidence that Keystone had not *paid* that amount—and indeed, the spreadsheet refers to those monies as "paid." Dkt. 42-12 at 1.

PAGE 5 – OPINION AND ORDER

according to their terms." The only reasonable and sensible construction of this provision is that the entirety of section 3—including section 3(c)—survived the July 2012 termination of the Contract. The marketing-support and brand-payment obligations appear only in section 3(c) and in no other part of the Contract. Accordingly, by the unambiguous terms of section 10(b), those obligations continued after July 2012.

Unlike sections 3(a) and (b), which specify a four-year term for payment of commissions, section 3(c) specifies no end date for its obligations. Perpetual agreements are disfavored in Oregon; in general, contracts that do not specify the duration of the relationship are deemed "at will" and may be terminated by either party with reasonable notice. *See Portland Section of Council of Jewish Women v. Sisters of Charity of Providence*, 266 Or. 448, 456 (1973); *Lund v. Arbonne Int'l, Inc.*, 132 Or. App. 87, 90 (1994). Thus, after the Contract terminated in July 2012, section 3(c) survived as an at-will agreement.

On December 10, 2012, Demystified notified Keystone that it was terminating the agreement effective December 31, 2012. That notice was reasonable because it tracked the timing of section 3(c), which contemplates marketing-support performance from Demystified one calendar year at a time. Accordingly, Keystone owed Demystified a brand payment for 2012. By failing to pay it, Keystone materially breached the Contract. Demystified is entitled to partial summary judgment on that element.

On the element of damages, however, Demystified's evidence is in dispute. Demystified asserts, based on the deposition of Keystone's David Murray, that it is owed $105,741.36 for the 2012 brand payment. *See* Dkt. 42-2 at 62:15-21. Keystone, however, points to Demystified's Deposition Exhibit 7 (Dkt. 42-6) at 5, on which the net amount due to Demystified is

PAGE 6 – OPINION AND ORDER

$43,655.67. Demystified is therefore not entitled to summary judgment on the element of damages.

## B. Affirmative Defenses and Counterclaims

Keystone also argues that its failure to perform in 2012 was excused for two reasons: first, because Demystified materially breached its express obligation to provide marketing support; and second, because Demystified materially breached its implied duty of good faith and fair dealing by expanding its business into Keystone's areas of expertise. Keystone asserts both arguments as counterclaims as well as affirmative defenses. Demystified seeks summary judgment in its favor against both counterclaims and affirmative defenses.

### 1. Marketing Support

Keystone alleges that Demystified provided no marketing support in 2012, thereby materially breaching the Contract and excusing Keystone's non-performance of its payment obligations. Demystified responds, first, that Keystone waived this defense and counterclaim by failing to assert it in its pleadings; and second, that Demystified did indeed provide marketing support.

Regarding waiver, a party is permitted to "raise an affirmative defense for the first time in [response to] a motion for summary judgment" as long as "the delay does not prejudice the [other party]." *Magana v. Commw. of the N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997). The rule for counterclaims is similar: Although "summary judgment is not a procedural second chance to flesh out inadequate pleadings," a party may assert a claim if it included sufficient factual allegations in its pleadings to give the other party notice of the claim. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (quotation marks omitted).

Here, Keystone's Answer contains the following:

PAGE 7 – OPINION AND ORDER

> For its Fourth Affirmative Defense and Second Counterclaim:
>
> 17. Prior to entering into the Agreement, and during the term of the Agreement, Plaintiff intended to <u>not</u> providing [*sic*] marketing support to Defendant as required by paragraph 3(c) of the Agreement, instead planning to deprecate Defendant's brand before throwing it away, in breach of its implied duty of good faith and fair dealing.
>
> 18. Plaintiff's breach was material, depriving Defendant of the benefit of its bargain, and Plaintiff's breach forfeits any rights to receive any "Brand Payment." Plaintiff should be required to repay the 2011 Brand Payment, and should be ordered to have forfeited any "Brand Payment" for 2012.

Dkt. 36 at 3 (emphasis in original). Additionally, in paragraph 7 of its Answer, Keystone denies Demystified's allegation that Demystified "performed all conditions on its part to be performed." Dkt. 17 at 5.

Keystone's Answer may not be a model of draftsmanship, but it does appear to have provided Demystified with notice of Keystone's defense and counterclaim on this point: In Demystified's opening brief—necessarily before Keystone's response—Demystified argued that it did indeed provide "regular and extensive marketing support." *See* Dkt. 40 at 15. Demystified was therefore not prejudiced by the lack of detail in Keystone's Answer, and Keystone accordingly did not waive this affirmative defense and counterclaim.

On the merits, the meaning of "marketing support" is a matter of contract interpretation. At oral argument, Keystone defined "marketing support" as *some* effort by Demystified to promote Keystone's brand through marketing, but argued that the term was ambiguous in the amount of effort required and what activities counted as efforts to promote Keystone's brand.

A contract term is ambiguous if, in the context of the agreement as a whole, it "is susceptible to more than one plausible interpretation." *Adair Homes, Inc. v. Dunn Carney Allen Higgins & Tongue, LLP*, 262 Or. App. 273, 277 (2014). When a term is ambiguous, the court

PAGE 8 – OPINION AND ORDER

may use extrinsic evidence of the parties' intent to aid in interpreting it. *Yogman v. Parrott*, 325 Or. 358, 363 (1997) (en banc). Accordingly, the general rule is that an ambiguous term precludes summary judgment, because extrinsic evidence must usually be evaluated by the trier of fact. *See, e.g.*, *Milne*, 207 Or. App. at 394. But that general rule applies only when there is "competing extrinsic evidence" that *creates* a triable issue of fact. *Dial Temp. Help Serv., Inc. v. DLF Int'l Seeds, Inc.*, 255 Or. App. 609, 612 (2013). When the extrinsic evidence is undisputed, on the other hand, the court may interpret an ambiguous contract term on summary judgment. *See id.*

Here, the term "marketing support" is indeed ambiguous: it could encompass a range of effort and include or exclude several sorts of activities. But "[t]he course of conduct pursued by parties in their performance of a contract . . . is frequently a reliable exponent of its meaning." *Perkins v. Standard Oil Co.*, 235 Or. 7, 15 (1963) (en banc). And here, the parties' course of conduct is undisputed and sufficient to resolve the ambiguity.

Demystified asserts that in 2011, it wrote six blog posts promoting Keystone and also invited Keystone representatives to a conference Demystified hosted in San Francisco. Matt Wright, an executive at Keystone through 2012, testified at his deposition that Keystone executives did not question the sufficiency of Demystified's 2011 performance. Keystone disputes neither of these assertions. Moreover, Keystone admits that it paid Demystified for its 2011 performance without protest. There is therefore no competing evidence and no triable issue of fact: The parties considered Demystified's performance in 2011 to be sufficient under the Contract.

Demystified asserts that in 2012, it invited Keystone representatives to two more conferences, as well as to six social-networking events. Keystone denies that this constituted "marketing support." *See* Dkt. 47 ¶ 10 ("[Demystified] invited Keystone to a few marketing

PAGE 9 – OPINION AND ORDER

events that appeared to be hosted by [Demystified] to elevate [Demystified's] brand, not Keystone's brand."). Of note, however, Keystone does *not* dispute the underlying assertion of fact regarding what Demystified did in 2012.

In sum, it is undisputed that Keystone accepted Demystified's 2011 performance, providing a baseline against which to compare subsequent performance. The facts of Demystified's 2012 performance are also undisputed. Demystified's 2012 performance at least equaled its 2011 performance. Demystified, therefore, is entitled to summary judgment that its 2012 performance, like its 2011 performance, was sufficient under the Contract.

### 2. Implied Duty of Good Faith and Fair Dealing

Keystone also argues that the Contract imposed an implied duty on the parties not to expand into each other's areas of expertise and that Demystified breached that duty "by hiring employees and expanding the services they offered so as to encompass the services agreed to be [Keystone's] services under [the Contract], and then not referring that work to [Keystone]." Answer (Dkt. 36) at 3. Demystified does not dispute that it did so, but argues only that it had no duty under the Contract, express or implied, to refrain from so doing.

Oregon law provides that "every contract contains an implied duty of good faith and fair dealing." *Arnett v. Bank of Am., N.A.*, 874 F. Supp. 2d 1021, 1033 (D. Or. 2012) (citing *Klamath Off–Project Water Users, Inc. v. Pacificorp*, 237 Or. App. 434, 445 (2010)). The implied duty prohibits conduct in performing a contract "that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Klamath Off-Project*, 237 Or. App. at 445 (quotation marks omitted). The duty "does not operate in a vacuum, [but rather] focuses on the agreed common purpose and the justified expectations of the parties, both of which are intimately related to the parties' manifestation of their purposes and expectations in the express provisions of the contract." *Id.* (quotation marks and alteration omitted). The

PAGE 10 – OPINION AND ORDER

touchstone of the duty is what was within the "objectively reasonable expectations of the parties." *See id.*

Here, the Contract had no express provision regarding whether one party could expand its business into the other's areas of expertise. But Exhibit B to the Contract, which lists each party's relative expertise for purposes of exclusive referrals, acknowledges that "both parties are able to provide training and technology audit services." Dkt. 41-1 at 13. The parties, therefore, expressly contemplated that they would, from the very outset, have overlapping areas of expertise. In that context, Keystone could not reasonably have expected the agreement to prohibit Demystified from expanding, as businesses naturally do, into adjacent areas of expertise.

Furthermore, in section 1(a) of the Contract, the parties expressly rejected any obligation to refer clients to each other. Thus, Demystified was entitled under the Contract to retain its clients—or even to turn them away—rather than refer them to Keystone. The object of the Contract, therefore, was not to generate a regular stream of referrals, but simply to eliminate the transaction cost associated with making individual referrals and bargaining for commissions on an ad hoc basis. Keystone continued to enjoy that "fruit" despite Demystified's expansion.[2]

Accordingly, the Court finds no implied duty within the four corners of the Contract prohibiting expansion into each other's areas of expertise. Moreover, during his deposition, Keystone's Gellis testified that he understood the Contract to permit the same expansion that Keystone now argues is prohibited. That extrinsic evidence is undisputed[3] and confirms the

---

[2] Indeed, as Demystified expanded, Keystone had the opportunity to refer more clients to Demystified and earn more commissions—possibly *increasing* the value of the Contract to Keystone.

[3] With its responsive brief, Keystone submitted a new declaration in which Gellis contradicts his deposition testimony. He now asserts that he "believ[ed] that implicit in the 2011 agreement was a promise that [Demystified] would not be hiring new employees to do the work that was supposed to be exclusive [*sic*] referred to Keystone under the 2011 agreement." Dkt. 47

PAGE 11 – OPINION AND ORDER

Court's conclusion. *See Arnett*, 874 F. Supp. 2d at 1035 (noting that determining the duties implied in a contract "may [involve] evidence from outside the terms of the contract"). Therefore, Demystified is entitled to summary judgment against this counterclaim and Keystone's non-performance is not excused.

## C. Remaining Issues

### 1. Quantum Meruit

Demystified argues that if there were no contract, then it would be entitled to summary judgment on its *quantum meruit* theory. Because both the commissions-payment and the brand-payment provisions of the Contract survived the termination of the business arrangement, there is no need to decide Demystified's *quantum meruit* claim. Accordingly, Demystified's motion for summary judgment on this claim is denied.

### 2. Damages

The amount of Demystified's contract damages remains to be determined. The parties are instructed to brief the Court on whether Keystone is entitled to any offset or equitable recoupment for referral commissions owed but not paid to it by Demystified. The parties are further instructed to brief the Court on the applicable liability cap, if any, under the Contract. In particular, the parties should seek to define the following terms appearing in section 5 of the Contract—"aggregate," "commission paid," and "event giving rise to the damages"—in light of this opinion. Within 14 days, the parties shall submit their proposed schedule for this briefing.

---

at 4-5. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). The district court, however, must first make a factual determination that the contradictory affidavit is actually "a sham produced merely to avoid summary judgment," and not "the result of an honest discrepancy, a mistake, or the result of newly discovered evidence." *Id.* at 266-67. Gellis's new declaration flatly contradicts his prior testimony with no explanation for the discrepancy. Accordingly, the Court finds that Gellis's new declaration is a sham on this point and does not consider it for purposes of summary judgment.

## CONCLUSION

Demystified's motion for summary judgment (Dkt. 40) is GRANTED with respect to the issue of material breach of contract, GRANTED with respect to Keystone's counterclaims and affirmative defenses, and DENIED with respect to the amount of Demystified's damages and its *quantum meruit* claim.

**IT IS SO ORDERED**.

DATED this 2d day of March, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge