## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **WEB ANALYTICS DEMYSTIFIED, INC.,** | Case No. 3:13-cv-1304-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KEYSTONE SOLUTIONS, LLC**, | |
| Defendant. | |

Katherine R. Heekin and Diana Fedoroff, THE HEEKIN LAW FIRM, 808 SW Third Avenue, Suite 540, Portland, OR 97204. Of Attorneys for Plaintiff.

Jonathan M. Radmacher, McEWEN GISVOLD LLP, 1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Web Analytics Demystified, Inc. ("Demystified") asserts a claim for breach of contract against Defendant Keystone Solutions, LLC ("Keystone"). Demystified moved for summary judgment and the Court granted that motion in part. The Court held that Demystified was entitled to summary judgment on the issue of material breach of contract, but that the amount of Demystified's damages remained to be determined. Dkt. 62. The Court also ordered additional briefing on two issues: first, whether Keystone is entitled to any offset or equitable

recoupment against Demystified's damages; and second, whether a liability-cap provision in the contract at issue applied, and if so, what it meant. In this supplemental ruling, the Court resolves these two outstanding issues under the standards applicable to a motion for summary judgment.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," the "mere existence of a scintilla of evidence in support of the [non-movant's] position [is] insufficient" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

## BACKGROUND

A complete factual background can be found in the Court's prior opinion and order. Dkt. 62 at 2-4. For the purposes of this opinion, the relevant facts are as follows:

Demystified and Keystone are both web consulting firms. They specialize in different aspects of website analysis, but with some overlap. In January 2011, the two firms entered into the contract at issue in this case. Dkt. 41-1 (hereinafter the "Contract"). The Contract provided that the two firms would refer clients to each other on an exclusive basis, and pay each other

commissions for those referrals. Further, the Contract provided that Keystone would pay Demystified a percentage of its yearly revenue in exchange for "marketing support" from Demystified. The parties called this the "brand payment." The term "marketing support" was not defined in the Contract but was given some content by the parties' course of conduct, as explained in the Court's prior ruling. Dkt. 62 at 8-10.

According to its terms, the Contract expired on July 11, 2012—but several provisions, including the payment obligation, survived. At some point in 2012, both Keystone and Demystified stopped paying commissions on referrals. By the end of 2012, it became clear that the parties could not reach a new agreement, and on December 10, Demystified notified Keystone that it was terminating the Contract. On January 31, 2013, the brand payment for 2012 was due, and Keystone did not pay it. Accordingly, Keystone was in material breach of the Contract. Dkt. 62 at 4-7.

## DISCUSSION

The two issues resolved in this supplemental ruling are, first, whether Keystone is entitled to offset its liability to Demystified with any commissions or other payments owed to it by Demystified; and second, whether section 5 of the Contract operates to limit Keystone's liability, and if so, in what way. For the reasons below, the Court concludes that Keystone is not entitled to offset its liability, but that Keystone's liability is limited by section 5 to the commissions it owed in the six months preceding January 31, 2013.

### A.  Offsetting Doctrines

Although the Court ruled that Keystone had materially breached the Contract by failing to pay commissions and the brand payment for 2012, *both* parties stopped paying commissions to each other sometime that year. Accordingly, the Court ordered further briefing on whether the

offsetting doctrines of setoff or equitable recoupment would operate to reduce Keystone's liability.

Both setoff and equitable recoupment are affirmative defenses that can "liquidat[e] the whole or part of [a] plaintiff's claim in situations where an independent action [or counterclaim] would not lie." *Rogue River Mgmt. Co. v. Shaw*, 243 Or. 54, 60 (1966). A defendant may raise the defense of setoff when the plaintiff owes him a contract debt "*independent of and unconnected with the cause of action* set forth in the complaint." *Oregon ex rel. Key W. Retaining Sys., Inc. v. Holm II, Inc.*, 185 Or. App. 182, 190 (2002) (quotation marks omitted) (emphasis in original). Recoupment, by contrast, is "confined to matters arising out of and connected with the transaction upon which the action is brought." *Rogue River*, 243 Or. at 58-59.

Here, any debt owed Keystone by Demystified is entirely dependent on the contract that forms the basis of this action, and therefore recoupment is the correct vehicle for any "netting out" of Keystone's and Demystified's mutual obligations to each other under the Contract. In its responsive pleading, however, Keystone did not assert recoupment *or* setoff as an affirmative defense. *See* Dkt. 36. Indeed, in its most recent briefing on the issue, Keystone confirmed that it does not seek recoupment or setoff in a "formal legal sense." Dkt. 70 at 2. Therefore, in the absence of a motion to amend its Answer to assert a recoupment defense,[1] Keystone cannot offset its liability through that doctrine.

The parties agree that while they were operating under the Contract, each month, the party that had accumulated the greater debt subtracted what it was owed and sent the other a check for the remainder. Keystone argues that the payment obligation under the Contract should

---

[1] Demystified also argues that by not asserting it as a compulsory counterclaim, Keystone waived its right to invoke equitable recoupment. But recoupment is expressly *not* a counterclaim. *Rogue River*, 243 Or. at 58-59 ("'Recoupment,' 'set-off' and 'counterclaim' are not synonymous terms.").

be understood to incorporate this course of conduct, and that for *this* reason its liability to

Demystified should be offset by Demystified's reciprocal obligations. But course-of-conduct

evidence is admissible only to clarify an ambiguity in a contract term. *Yogman v. Parrott*, 325

Or. 358, 363-64 (1997). Here, the Contract is quite clear: "The Receiving Party will be

responsible for monthly reporting to the Referring Party and paying the Commission Rate based

on payments received from the Client on a Net 30 basis." Contract at p. 4, section 3. Thus,

regardless of how the parties actually resolved their obligations, the terms of the Contract

provide for *each* party to pay the other its total obligation on a monthly basis. That the parties

actually combined their total obligations to arrive at a single net payment from one party to the

other cannot detract from the unambiguous terms of the Contract.

## B.  Liability Cap

Section 5 of the Contract includes the following language:

> In no event shall either party's aggregate liability to the other party
> under this agreement for any cause, regardless of the form of the
> action . . . exceed the aggregate of the amount of the commission
> paid under this agreement in the six (6) months preceding the event
> giving rise to the damages.

This provision has the potential significantly to limit Keystone's liability for its breach, but

Demystified argues that it is an unenforceable liquidated-damages clause. Further, even if the

clause is enforceable, its meaning is ambiguous in several ways. The date of the "event giving

rise to the damages" demarcates the six-month period of commissions that defines the liability

cap, but precisely which "event" gave rise to the damages is not clear in this case. The amount of

the liability cap is "the aggregate amount of the commission paid" within that period, but

whether "aggregate amount" means the total of the amount paid by a particular party, the total or

the net paid by both parties, the total due and presumed to have been paid, or something else, is

unclear. Accordingly, the Court ordered further briefing to clarify the meaning of section 5.

PAGE 5 – OPINION AND ORDER

### 1.  Enforceability

Oregon courts analyze a purportedly unlawful penalty clause in two stages. First, the court determines whether the clause is in fact a liquidated-damages clause; and second, if so, the court determines whether the clause is an unlawful penalty. *Wells Fargo Bank, N.A. v. The Ash Organization*, 2010 WL 2681675, at *9 (D. Or. July 2, 2010). The party seeking to invalidate the clause bears the burden of proving that it is unlawful. *Illingworth v. Bushong*, 297 Or. 675, 688 (1984).

A clause in a contract is a liquidated-damages clause if it "'set[s] the amount of damages to be recovered by one party from another in case of the latter's failure to perform as agreed.'" *DiTommaso Realty v. Moak Motorcycles*, 309 Or. 190, 195 (1990) (quoting *Illingworth*, 297 Or. at 681). The court in *DiTommaso* held that liquidated damages, which become due because a contract promise has been *breached*, must be distinguished from recovery on the theory that "an amount is due because a contract term has been *satisfied*." *Id.* at 196 (emphasis added). A liquidated-damages clause is valid if it bears a "reasonable relationship" to anticipated damages that would be difficult to ascertain precisely, and invalid if it is a disproportionate penalty intended to deter breach. *See Illingworth*, 297 Or. 681-83.

Section 5, however, fits none of the above paradigms. Because it is operable only in the event of litigation leading to liability, it does not set the terms of compensation for performance under the Contract. Nor does it bear any reasonable relationship to anticipated damages, as it operates to limit all sorts of liability regardless of source or nature of the actual damage suffered. Nor can it be characterized as a penalty intended to deter breach; if anything, a limit on a party's

liability for breach may *encourage* breach. Whatever else section 5 may be,[2] it is not a liquidated-damages clause.

### 2. The "event giving rise to the damages"

The parties agree that Keystone's failure to make the 2012 brand payment when it became due on January 31, 2013, is the event giving rise to Demystified's damages for *that* breach. Demystified asserts that until January 31, 2013, it believed Keystone's failure to pay commissions was merely a result of miscommunication rather than a breach of contract. Demystified argues that therefore, that date defines the liability cap for *all* damages claimed in this action, including both the brand payment and the unpaid commissions, because the triggering event must be the event that caused Demystified to make a claim for *damages*. Keystone, by contrast, argues that each failure to make a payment is its own "event giving rise to the damages."

Keystone's interpretation does not comport with the plain meaning of section 5 for at least three reasons. First, section 5 limits a party's "liability . . . for any cause, regardless of the form of the action." That is, as Demystified argues, it specifically concerns a *legal claim* for damages, not merely a contractual right to compensation. Second, it concerns the party's "*aggregate* liability" in that legal action, without subdivision for each claim. And third, the clause refers to "*the* event"—a *single* event—that gives rise to the liability. Thus, it operates as a single limit on the aggregate amount of damages that a party can claim. To interpret it as a different limit on each claim for damages would render the clause meaningless. Therefore, the "event giving rise to the damages" was Keystone's breach on January 31, 2013.

---

[2] As explained *infra* Part B.3, section 5 applies much more readily to tort claims than to contract claims.

### 3. The "aggregate amount of the commission paid"

Two words in this term are ambiguous: "aggregate" and "paid." Keystone argues that "paid" means *paid*. This argument might seem unexceptionable, but Demystified asserts that in context, the word is better interpreted as "owed." The Contract as a whole, Demystified argues, contemplates that the parties would promptly pay each other and never carry a balance for longer than 30 days. *See* Contract § 3(b). Therefore, according to Demystified, capping liability to commissions paid was identical to capping liability to commissions owed.

Demystified's argument is well taken. Section 5 was written to cover all sorts of claims for damages, including—perhaps primarily—tort claims. As a limitation on *tort* liability, section 5 makes economic sense: it limits the amount of recovery for accidents occurring within the context of an arms-length business relationship to a proportion of the recent value of the relationship. When liability is premised on a tort injury, section 5 would operate to cap a party's potential liability to the commissions it had paid—a proportion of the business it had received from the other party—in the foregoing six months.

As a limitation on *contract* liability—that is, as a limitation on what a party may recover when the relationship itself has failed—the sense of section 5 is somewhat more dubious. But the text of section 5 expressly extends to liability for "breach of contract," and as the parties agreed to that text, the Court must so interpret it. When liability is premised on a total failure to pay commissions, the parties are unlikely to have agreed to cap the breaching party's liability to the commissions it had actually paid. The more sensible interpretation is that in the case of a failure to pay commissions, the breaching party's liability is limited to commissions it *owed* in the prior six months.

For the meaning of "aggregate," the parties offer three potential definitions: the total owed by one party (although which party is unclear), the total owed by both parties, and the net

owed between the parties. Using the foregoing analysis, however, in a tort case, a party's potential liability would be capped by section 5 to the commissions it had paid in the six months preceding the event giving rise to the damages; in this case, therefore, Keystone's liability is limited to the commissions it *owed* for those six months.

**CONCLUSION**

The Court answers the supplemental questions relating to damages as set forth in this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 25th day of August, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge